UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES COOPER,                    )
                                 )
                                 )          CIVIL ACTION NO:
                                 )          _____
                                 )
          Plaintiff,             )          **JURY TRIAL**
                                 )          **DEMANDED**
     v.                          )
                                 )
MONRO, INC.; MONRO SERVICE       )
CORPORATION; AND                 )
MONRO MUFFLER BRAKE, INC.        )
                                 )
          Defendants.            )
_____)

## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, James Cooper ("Mr. Cooper" or "Plaintiff"), is a 57-year-old (born

in February 1965) resident of the State of New York residing at 4783 Clinton Street, West

Seneca, New York 14224.

2.      Defendant, Monro, Inc. is a domestic for-profit company doing business in New

York State. Monro, Inc. is incorporated under New York State law and has a principal office

located 200 Holleder Parkway, Rochester, NY 14615.

3.      Defendant, Monro Service Corporation ("Monro Service") is a foreign

corporation doing business in New York State. Monro Service is incorporated under Delaware

law and has a principal office located 200 Holleder Parkway, Rochester, NY 14615.

4.      Defendant, Monro Muffler Brake, Inc.("Monro Muffler") is a for-profit

corporation doing business in New York State. Monro Muffler is incorporated under Florida law

and has a principal office located at 200 Holleder Parkway, Rochester, NY 14615. (Monro, Inc.,

Monro Service, and Monro Muffler collectively the "Company").

## Jurisdiction and Venue

5.     This court has subject matter jurisdiction under 28 U.S.C. §1331 because Mr.

Cooper has brought a claim pursuant to the Age Discrimination in Employment Act ("ADEA")

29 U.S.C. §§ 621 *et seq.*, the Americans with Disability Act ("ADA") 42 U.S.C. §§ 1201 *et seq.*,

and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615.  The court may exercise

supplemental jurisdiction over Mr. Cooper's state law claims.  28 U.S.C. §1367.

6.     Venue is appropriate in the Western District of New York as the Company's

principal place of business is located in the Western District of New York and/or the acts or

omissions giving rise to the claims in this Complaint occurred in the Western District of New

York.

7.     The court has jurisdiction over Monro, Inc. because Monro, Inc. is a resident of

New York both because it is incorporated in New York and because Monro, Inc.'s principal

place of business is located in the State of New York.  Furthermore, Monro, Inc. has engaged in

and transacted business in the State of New York, including by managing and/or operating a

business in New York and/or employing the Plaintiff in New York. Indeed, the Plaintiff was

employed by Monro, Inc. in the State of New York, was managed by Monro, Inc. in the State of

New York, and was terminated by Monro, Inc. in the State of New York.

8.     The court has jurisdiction over Monro Service because Monro Service is a

resident of New York, including because Monro Service principal place of business is in located

in the State of New York.  Furthermore, Monro Service has engaged in and transacted business

in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York. Indeed, the Plaintiff was employed by Monro Service in the State of New York, was managed by Monro Service in the State of New York, and was terminated by Monro Service in the State of New York.

9.      The court has jurisdiction over Monro Muffler because it is a resident of New York, including because Monro Muffler's principal place of business is in located in the State of New York.  Furthermore, Monro Muffler has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York. Indeed, the Plaintiff was employed by Monro Muffler in the State of New York, was managed by Monro Muffler in the State of New York, and was terminated by Monro Muffler in the State of New York.

<u>**Statement of Facts**</u>

10.      In or around November 2016, Mr. Cooper began his employment with the Company as a store manager at its location at 2375 Harlem Road, Cheektowaga, New York 14225.

11.      Mr. Cooper's worksite (for the purpose of the FMLA) which he was assigned to, reported to, worked primarily from, and received work assignments from, was the Company's facility located at 237 Harlem Road, Cheektowaga, New York 14225.

12.      Notably, Monro, Inc.,  Monro Service, and Monro Muffler shared common management and shared centralized control over employees and labor relationships, such as setting schedules, hiring, firing, and/or through management of the Human Resources. Notably, Monro, Inc.,  Monro Service, and Monro Muffler together shared substantial control over Mr. Cooper's pay and day to day activities, including by promulgating work rules and conditions of

employment (such as maintaining and providing Company policies and guidelines), maintaining

control over Mr. Cooper's work assignments, and maintaining Mr. Cooper's employment records

and/or personnel file.

13.     Furthermore, Monro, Inc.,  Monro Service, and Monro Muffler operated as a

single integrated employer (under standards established by the FMLA and other applicable

laws). Importantly, Monro, Inc.,  Monro Service, and Monro Muffler had common management

structures, had significant interrelation between operations, had significant centralized control of

labor relations, and a significant degree of common ownership/financial control. Upon

information and belief, Monro, Inc.,  Monro Service, and Monro Muffler shared and/or

comingled funds and acted as a partnership in fact.

14.     Accordingly, at all relevant times, Mr. Cooper was jointly employed by Monro,

Inc.,  Monro Service, and Monro Muffler.

15.     At all relevant times, the Company (including Monro, Inc.,  Monro Service, and

Monro Muffler each individually and all collectively) was engaged in an industry affecting

commerce and employed 50 or more employees during 20 or more calendar weeks in each

current and/or preceding calendar year.

16.     As such, at all relevant times, the Company (including Monro, Inc.,  Monro

Service, and Monro Muffler each individually and all collectively) was a covered employer

under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act

("ADEA"), and the New York State Human Rights Law.

17.     Additionally, at all relevant times, the Company (including Monro, Inc.,  Monro

Service, and Monro Muffler each individually and all collectively) was an employer under the

Family and Medical Leave Act ("FMLA").

18.     At all relevant times, Mr. Cooper was a qualified employee and his job performance was satisfactory.

19.     Prior to Mr. Cooper's beginning his employment in November 2016, Mr. Cooper was diagnosed with type 2 diabetes. Mr. Cooper was also diagnosed with asbestosis (a chronic lung disease caused by inhaling asbestos fibers and asbestos poisoning).

20.     Mr. Cooper's type 2 diabetes substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's eating, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's type 2 diabetes also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's endocrine system.

21.     Mr. Cooper's asbestosis substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's breathing, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's asbestosis also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's respiratory and immune system.

22.     Accordingly, Mr. Cooper's type 2 diabetes and asbestosis are disabilities under state and federal law.  As such, during all relevant times, Mr. Cooper was disabled under state and federal law.

23.     As a complication of Mr. Cooper's disabilities, Mr. Cooper's immune system was also suppressed, thus causing further immune system-related complications (including, but not limited to, more frequent and/or severe flare ups of illnesses that were more difficult for Mr. Cooper to heal from). Indeed, due to Mr. Cooper's diagnosed disabilities Mr. Cooper had a harder time recovering from, and experienced more severe symptoms related to, other respiratory

illnesses. For example, Mr. Cooper often experienced frequent and severe flare-ups of pneumonia (which were related to, worsened by, and exacerbated by Mr. Cooper's underlying disabilities). Mr. Cooper was prescribed steroids in response to these disability-related flare ups.

24.     Mr. Cooper was hired and initially supervised during his employment by Daryl Chesly ("Mr. Chesly"), the district manager.

25.     In or around 2019, however, Mr. Chesly was replaced by Paul Smith ("Mr. Smith"), who became the new district manager (and Mr. Cooper's direct supervisor).

26.     Upon information and belief, Mr. Smith is a non-disabled individual who is at least five years younger than Mr. Cooper.

27.     Once Mr. Smith started with the Company, it was clear that he was discriminating against Mr. Cooper based on Mr. Cooper's age.

28.     For example, on numerous occasions throughout Mr. Cooper's employment, Mr. Smith would make comments such as "you are too old" or "you are getting too old to work on cars."

29.     In or around early February 2020, Mr. Cooper experienced a severe flare up of respiratory-related symptoms, which was seemingly caused or exacerbated by Mr. Cooper's disabilities. Due to the severity of the symptoms, Mr. Cooper sought treatment from a local urgent care center. Mr. Cooper's doctor recommended that he utilize a short medical leave to undergo further medical care and treatment for his symptoms.

30.     As soon as Mr. Cooper was reasonably able to, Mr. Cooper contacted Mr. Smith and disclosed his disabilities to Mr. Smith.

31.     Indeed, on or around February 9, 2020, Mr. Cooper texted Mr. Smith and stated, "Both of my lungs are loaded with pneumonia compounded by my asbestos poisoning[.]"  Mr.

Cooper further requested a disability-related accommodation of a short medical leave (approximately four days) in order to seek disability-related treatment and recover from his disability-related flare up.

32.     Furthermore, at all relevant times, the Company employed 50 or more employees within a 75-mile radius of the worksite at which Mr. Cooper worked.

33.     Likewise, at all relevant times following November 2017, Mr. Cooper had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Mr. Cooper was an employee eligible for, and entitled to, FMLA leave.

34.     The symptoms that Mr. Cooper was experiencing, which were seemingly a result of his diagnosed disabilities and/or his disability's interaction with some other respiratory illness, such as a pneumonia, constituted a serious medical condition causing periods of incapacity and continuing treatment and served as a legitimate basis for protected leave for FMLA.

35.     As such, Mr. Cooper was an employee eligible for leave protected under the FMLA.

36.     Mr. Cooper's disability-related accommodation request for leave (which further qualified as leave protected under the FMLA) was granted.

37.     On or around Monday, February 10, 2020, Mr. Cooper became aware that Mr. Smith was retaliating against him (Mr. Cooper) and subjecting him (Mr. Cooper) to further discrimination based on his age, his disability, and his status as an older individual with a disability. Indeed, Mr. Smith told Mr. Nowicki that he was going to fire Mr. Cooper. Based on the timing alone (this was within days following Mr. Cooper requesting and utilizing his disability-related protected leave), it was clear that this was in response to Mr. Cooper's request for a disability accommodation, which further qualified as leave protected under the FMLA.

38.     Younger, non-disabled employees at the Company were not treated in this manner. Indeed, younger non-disabled employees were freely able to request and utilize four day-long (or longer) leaves that were for non-disability related reasons and these employees were not threatened with termination for their conduct.

39.     Shortly thereafter, Mr. Cooper returned to work as scheduled.

40.     In or around March 2020, the COVID-19 (coronavirus) pandemic had become widespread, particularly in the New York area.

41.     Notably, due to Mr. Cooper's underlying disability, he was at a higher risk for complications and severe symptoms of COVID-19 (coronavirus).

42.     On or around March 21, 2020, Mr. Cooper's family (his wife and children) were experiencing symptoms of COVID-19. Mr. Cooper's family's doctor recommended that the entire family (including Mr. Cooper), regardless of whether they were exhibiting symptoms or not, self-quarantine for two weeks. Mr. Cooper's wife contacted the Company (through Mr. Smith) on Mr. Cooper's behalf. Mr. Cooper's wife explained that their family (including Mr. Cooper) had been directed by their doctor to self-quarantine for two weeks due to COVID-19 symptoms, possible COVID-19 exposure, and/or to avoid spreading COVID-19. She further informed Mr. Smith that Mr. Cooper's disability meant that he was at much higher risk of experiencing severe symptoms if he contracted COVID-19 and raised protected concerns about his (Mr. Cooper's) susceptibility to the coronavirus (due to his underlying disabilities), as well as the fact that, due to his disability, if he were to contract the coronavirus disease, he would likely experience life threatening complications. Indeed, she noted that "…once symptoms appear, [Mr. Cooper] will most likely have a lot of problems due to having diabetes. They said people with diabetes can have a lot of severe issues."

43.     As such, it was clear that Mr. Cooper's wife was raising protected concerns on Mr. Cooper's behalf and requesting the reasonable disability-related accommodation request of a temporary leave based on his doctor's orders to self-quarantine for two weeks.

44.     Thus, Mr. Cooper (through his wife, Jackie Cooper) clearly conveyed protected discrimination concerns regarding Mr. Cooper's disability and his status as an older individual with a disability. Furthermore, Jackie Cooper (on the behalf of Mr. Cooper) conveyed the request for a reasonable disability-related accommodation of a temporary leave based on his doctor's order to self-quarantine to avoid exposure to COVID-19 and/or to avoid transmitting COVID-19 to other individuals. However, it was made clear that Mr. Cooper was willing and open to engaging in an interactive dialogue concerning his requests.

45.     This request for leave was granted.

46.     On or around March 22, 2020, Mr. Cooper again experienced a severe flare up of respiratory-related symptoms, which was caused by and/or exacerbated by Mr. Cooper's disabilities.  Indeed, the symptoms that Mr. Cooper was experiencing, which were likely a result of his diagnosed disabilities and/or his disability's interaction with coronavirus (or some other illness, such as a pneumonia).

47.     Accordingly, Mr. Cooper contacted Mr. Smith and informed him of his disability-related condition and flare up.  Mr. Cooper requested a disability-related accommodation of a short medical leave (approximately two weeks until on or around April 5, 2020 and to return on or around April 6, 2020) to receive further follow up medical care and fully recover. Indeed, this request constituted a request for leave protected under the FMLA.

48.     Mr. Cooper's disability-related accommodation request for leave protected under the FMLA was granted.

49.     On or around March 29, 2020, Mr. Smith contacted Mr. Cooper and strangely demanded that Mr. Cooper report to work on Monday (March 30, 2020). This was despite the fact that Mr. Cooper had requested and been granted an accommodation of leave until after March 30, 2020 (and indeed, a leave until on or around April 5, 2020 and to return to work on or around April 6, 2020).

50.     Mr. Smith then inexplicably claimed that Mr. Cooper had agreed to return on or around March 30, 2020, which was false.

51.     In response, Mr. Cooper contacted Mr. Smith directly and clarified that during their previous discussions (wherein he requested the reasonable disability-related accommodation, which was seemingly granted at the time), he (Mr. Cooper) had not said he would return on March 30, 2020.  Indeed, Mr. Cooper had in fact requested a reasonable disability-related leave (which further qualified as leave protected under FMLA) until at least April 5, 2020.

52.     Thus, by demanding that Mr. Cooper return to work before April 5, 2020 (despite ostensibly granting an accommodation of leave until then), it was clear that the Company was retroactively denying Mr. Cooper's request (per his doctor's recommendation) for leave of approximately two weeks and, furthermore, refusing to engage in an interactive dialogue concerning his request(s). The Company was also interfering with Mr. Cooper's rights under the FMLA.

53.     Mr. Cooper clearly conveyed protected concerns about the fact that his request for leave through April 5, 2020 was being denied, that he was being required to return to work earlier than his request provided for, and noted that his continued leave was important because he

was "still sick" and that his disability-related medical condition "came back worse than it was before."

54.     On or around April 5, 2020, Mr. Cooper contacted Mr. Smith regarding his scheduled return to work for the following morning (April 6, 2020). While Mr. Cooper clearly communicated that he would come into work as scheduled on April 6, 2020 if the Company insisted, Mr. Cooper further requested the reasonable disability-related accommodation of an extension of his medical leave, which further qualified as leave protected under the FMLA.

55.     However, Mr. Cooper clearly conveyed that he was open and willing to engage in an interactive dialogue with the Company concerning his request. In addition, as the Company had failed to meaningful respond or address Mr. Cooper's prior concerns, Mr. Cooper likewise reiterated his protected concerns, including by stating, "with immune system issues like a person like my self with diabetes… yes is it a worry for me I'm not expecting someone who may not have that problem to worry but I am so it is a big deal to me."

56.     However, as before, Mr. Cooper clearly conveyed he was open and willing to engage in further discussions regarding his request, or alternative accommodations, and reiterated that he could return to work on April 6, 2020.  Indeed, in connection with offering to return to work on April 6, 2020 if the Company denied his request for an extension of disability-related leave, Mr. Cooper asked: "so do you want me in in the morning and if so what time."

57.     However, Mr. Smith did not respond to Mr. Cooper in a meaningful manner to Mr. Cooper and instead responded "lol" (which is an abbreviation for the phrase "laughing out loud").

58.     On or around April 6, 2020, Mr. Cooper again contacted Mr. Smith and inquired, "[W]here do I drop my [doctor's] notes off …." Indeed, Mr. Cooper reiterated his request for a

disability-related accommodation of leave for approximately two weeks and further cited to his disability and his concerns due to his "super high risk" status.

59.     Thus, Mr. Cooper was reiterating that he was open and willing to engage in further discussions regarding his request and/or to discuss alternative accommodations, but noted that he would provide that Company with doctor's notes certifying his need for the requested accommodations and a further disability-related accommodation of leave.

60.     On or around April 7, 2020, Mr. Cooper emailed a doctor's note to employee relations regarding his disability-related accommodation request. Indeed, the doctor's note certified his need for the disability-related accommodation of leave from April 6, 2020 to May 1, 2020 due to his disability-related flare up. This request further qualified as a request for leave protected under the FMLA.

61.     Mr. Cooper's request was granted.

62.     Thus, Mr. Cooper was granted a disability-related accommodation of medical leave (which further qualified as protected FMLA leave) to last until at least May 1, 2020.

63.     Around that same time, Mr. Cooper contacted Mr. Smith and confirmed that he had provided his doctor's notes certifying his need for a further disability-related accommodation to employee relations.

64.     On or around April 9, 2020, Mr. Smith contacted employee relations (through both Sara Marathe ("Ms. Marathe"), from employee relations, and the general employee relations email) and provided the Company with the text messages certifying Mr. Cooper had repeatedly contacted Mr. Smith to request disability-related accommodations and had repeatedly raised protected concerns to Mr. Smith about his disability and disability-related accommodation requests.

65.     Jill Stefanelli ("Ms. Stefanelli") from employee relations responded confirming receipt and claimed that she would get back to Mr. Cooper after the Company reviewed his correspondence.

66.     On or around April 10, 2020, Mr. Cooper reiterated his protected concerns to Ms. Marathe. Indeed, Mr. Cooper informed the Company of Mr. Smith's discriminatory, harassing, and/or retaliatory conduct (including the discriminatory comments).

67.     On or around April 12, 2020, Mr. Cooper was informed by Mr. Nowicki (the assistant store manager) that Mr. Smith was threatening to terminate Mr. Cooper because Mr. Cooper was not at work (despite the fact that Mr. Cooper had been granted a disability-related accommodation of leave protected under the FMLA).

68.     Mr. Cooper contacted Mr. Smith directly and raised protected concerns about Mr. Smith's discriminatory and retaliatory conduct, and further raised protected concerns regarding the fact that he (Mr. Cooper) was on an approved disability-related accommodate of leave which was further protected under the FMLA.

69.     Mr. Smith was dismissive of Mr. Cooper's concerns.

70.     On or around April 15, 2020, Mr. Cooper had not heard back from the Company regarding his protected concerns that he had raised to employee relations (through Ms. Marathe and Ms. Stefanelli). Mr. Cooper contacted Ms. Stefanelli again.

71.     On or around April 18, 2020, Mr. Cooper received a termination letter from the Company.

72.     Indeed, in later filings with the New York State Division of Human Rights, the Company claimed that Mr. Cooper was a no call no show, had failed to communicate with the Company, and had failed to provide the Company with medical paperwork, all of which was

clearly false and it was clear that the date(s) the Company claimed Mr. Cooper was a no call no

show were covered as a disability related accommodation and/or FMLA-covered leave.

73.     Upon information and belief, Mr. Cooper was replaced by a younger and/or non-

disabled individual.

74.     Furthermore, it was clear that Mr. Cooper's termination was in retaliation for the

leave that he had requested and/or utilized under the FMLA. Indeed, Mr. Cooper was terminated

while using, and/or attempting to return from, his leave protected under the FMLA.

75.     Obviously, if the Company had asserted (implausibly) that it was an undue burden

for Mr. Cooper to stay out for an additional short medical leave, Mr. Cooper would have gladly

participated in an interactive dialogue to explore alternative accommodations that could have

potentially allowed him to return earlier or some other date, potentially with one or more

accommodations.

76.     Indeed, Mr. Cooper (through his repeated communications to Mr. Smith and the

Company) made it abundantly clear that he was willing and open to engage in an interactive

dialogue concerning his disability-related accommodation requests.

77.     Notably, it would not have been an undue burden for the Company to grant Mr.

Cooper his disability-related request of a short medical leave.

78.     Indeed, during his employment, the Company (including Mr. Smith) never

asserted to Mr. Cooper that it believed the requested leave would impose an undue burden.

Indeed, prior to his termination, the Company never even informed Mr. Cooper that it was

denying his request for an extension of his protected medical leave and never informed Mr.

Cooper that he would be terminated if he did not promptly return from leave.

79.     Mr. Cooper was fully intending to return to work (and even offered to do so on several occasions) but was not given the chance. Indeed, had the Company engaged in an interactive dialogue with Mr. Cooper (which it did not), there were other potential accommodations which could likely have allowed Mr. Cooper to resume work more quickly, without needing additional leave.

80.     Indeed, the Company summarily terminated Mr. Cooper rather than engage in the required interactive dialogue.

81.     Importantly, this sudden and abrupt termination came just days after Mr. Cooper requested a disability-related accommodation of leave (which was protected under the FMLA).

82.     Indeed, Mr. Cooper was terminated while utilizing his requested disability-related accommodation of medical leave (which had seemingly been approved at the time), and which further qualified as a leave protected under the FMLA.

83.     Even if it were to be assumed, arguendo, that Mr. Cooper did miss work as the Company claims, the Company has a progressive discipline policy, wherein individuals are first disciplined with a verbal warning, then two written warnings, then a suspension, all before termination.

84.     Notably, the Company skipped at least four steps in its progressive discipline policy by summarily terminating Mr. Cooper when it did.  Thus, the Company failed to follow its own policies by terminating Mr. Cooper in the manner it did.

85.     On or around November 9, 2020, Mr. Cooper timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR"), which was cross filed with the United States Equal Employment Opportunity Commission ("EEOC").

86.     On or around April 28, 2021, the NYSDHR issued a probable cause finding in this case indicating that probable cause exists to believe that the Respondents engaged in unlawful discriminatory practices as set out in Mr. Cooper's Charge of Discrimination.

87.     On or around April 7, 2022, Mr. Cooper informed the NYSDHR and EEOC of his intent to remove his Charge to pursue his claims in court.

88.     On or around May 5, 2022, the NYSDHR issued an administrative closure to allow Mr. Cooper to pursue his claims in court.

89.     On or around August 22, 2022 the EEOC issued a right to sue letter for Mr. Cooper.

90.     This lawsuit is timely filed.

## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

91.     Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

92.     At all relevant times, the Company (including Monro, Inc.,  Monro Service, and Monro Muffler each individually and all collectively) was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

93.     Mr. Cooper suffers (and all relevant times suffered) from disabilities, including, type 2 diabetes and asbestosis.

94.     Mr. Cooper disclosed his disabilities to the Company.

95.     Mr. Cooper's type 2 diabetes substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's eating, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's type 2 diabetes also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's endocrine system.

96.     Mr. Cooper's asbestosis substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's breathing, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's asbestosis also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's respiratory and immune system.

97.     Accordingly, Mr. Cooper is (and at all relevant times was) disabled under the ADA.

98.     At all relevant times, Mr. Cooper was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

99.     Mr. Cooper disclosed his disabilities to the Company, and/or the Company was aware of Mr. Cooper disabilities, and/or the Company regarded Mr. Cooper as disabled.

100.     Mr. Cooper requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, a temporary leave of absence to obtain medical treatment (or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

101.    The disability-related accommodations requested by Mr. Cooper did not pose an undue burden on the Company.

102.    The Company failed to engage in an interactive dialogue and unlawfully denied (or revoked) one or more of Mr. Cooper's disability-related accommodation requests, including, but not limited to, denying one or more requests to a temporary leave of absence to obtain medical treatment (or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

103.    The Company discriminated against Mr. Cooper due to his disabilities by subjecting Mr. Cooper to adverse actions, including, but not limited to, subjecting Mr. Cooper to a harassing and otherwise hostile work environment, denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

104.    Upon information and belief, the Company replaced Mr. Cooper with a lesser or similarly qualified, non-disabled employee.

105.    Non-disabled employees of the Company were treated more favorably than Mr. Cooper, including through not being improperly harassed, not being subjected to a hostile work environment, being provided with progressive discipline, and/or not being terminated.

106.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Cooper.

107.    Notably, upon information and belief, at the time of Mr. Cooper's termination, the Company employed at least 501 employees.

108.    In the alternative, at the time of Mr. Cooper's termination, the Company employed at least 201 to 500 employees.

109.    In the alternative, at the time of Mr. Cooper's termination, the Company employed at least 101 to 200 employees.

110.    As a direct and proximate result of the Company's violation of the ADA, Mr. Cooper has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

111.    Mr. Cooper seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorney's fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

112.    Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

113.    the Company (including Monro, Inc.,  Monro Service, and Monro Muffler each individually and all collectively) is an employer under the definition of the New York State Human Rights Law because, at all relevant times, it employed four or more persons.

114.    Mr. Cooper suffers (and all relevant times suffered) from disabilities, including, type 2 diabetes and asbestosis.

115.    Mr. Cooper disclosed his disabilities to the Company.

116.    Mr. Cooper's type 2 diabetes substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's eating, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's type 2 diabetes also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's endocrine system.

117.    Mr. Cooper's asbestosis substantially limited one or more of his major life activities, including but not limited to, Mr. Cooper's breathing, ability to engage in physical activity, and his ability to perform daily manual tasks (such as caring for himself). Furthermore, at all relevant times, Mr. Cooper's asbestosis also substantially impaired one or more major bodily function, including, but not limited to, Mr. Cooper's respiratory and immune system.

118.    Accordingly, Mr. Cooper is (and at all relevant times was) disabled under the New York State Human Rights Law.

119.    At all relevant times, Mr. Cooper was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

120.    Mr. Cooper disclosed his disabilities to the Defendants, and/or the Defendants were aware of Mr. Cooper's disabilities, and/or the Defendants regarded Mr. Cooper as disabled.

121.    Mr. Cooper requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, a temporary leave

of absence to obtain medical treatment (or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

122.    The disability-related accommodations requested by Mr. Cooper did not pose an undue burden on the Defendants.

123.    The Company failed to engage in an interactive dialogue and unlawfully denied (or revoked) one or more of Mr. Cooper's disability-related accommodation requests, including, but not limited to, denying one or more requests to a temporary leave of absence to obtain medical treatment (or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

124.    The Company discriminated against Mr. Cooper due to his disabilities by subjecting Mr. Cooper to adverse actions, including, but not limited to, subjecting Mr. Cooper to a harassing and otherwise hostile work environment, denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

125.    Non-disabled employees of the Company were treated more favorably than Mr. Cooper, including through not being improperly harassed, being provided with progressive discipline, not being subjected to a hostile work environment, and/or not being terminated.

126.    Upon information and belief, Defendants replaced Mr. Cooper with a lesser or similarly qualified, non-disabled employee.

127.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cooper and/or conduct so reckless to amount to such disregard.

128.    As a direct and proximate result of the Defendants' violations of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

129.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorney's fees, and costs.

## COUNT III

### Age Discrimination in Violation of 29 U.S.C. §§ 621 *et seq.*

### Mr. Cooper v. the Company
### (Monro, Inc., Monro Service, and Monro Muffler)

130.    Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

131.    The Company (including Monro, Inc., Monro Service, and Monro Muffler each individually and all collectively)  is an employer under the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (hereinafter, "ADEA") because the Company is engaged in an industry affecting commerce and, upon information and belief, had twenty or more employees for each working day in each of twenty or more calendar weeks during the relevant years.

132.    Mr. Cooper was born in 1965 and, at all relevant times, was over 40 years old.

133.    The Company, including, through its agents, harassed and discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age, because Plaintiff was over 40 years old, and/or because Plaintiff was an older individual with a disability ("age plus" discrimination).

134.    More specifically, and by way of illustration, the Company subjected Ms. Cooper to adverse actions because of his age, including, but not limited to, subjecting Mr. Cooper to a harassing and otherwise hostile work environment (including discriminatory age-based comments), denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment because Mr. Cooper was over 40 years old and/or because Mr. Cooper was an older individual with a disability ("age plus" discrimination).

135.    Indeed, upon information and belief, Mr. Cooper was replaced by an individual who is significantly younger than he was.

136.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Cooper.

137.    As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

138.     Mr. Cooper seeks all damages to which he is entitled, including, but not limited to

lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e.,

double) damages, interest, attorney's fees, and costs.

**COUNT IV**
**(Age Discrimination in Violation of the New York State Human Rights Law, Executive**
**Article 15, Section 296)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

139.     Mr. Cooper incorporates all paragraphs above and below as if set forth fully

herein.

140.     Mr. Cooper was born in 1965 and, at all relevant times, was over 40 years old.

141.     The Defendants, including, but not limited to, through their agents, harassed and

discriminated against the Plaintiff with respect to his compensation, terms, conditions, or

privileges of employment, because of the Plaintiff's age, because Plaintiff was over 40-years-old,

and/or because Plaintiff was an older individual with a disability ("age plus" discrimination).

142.     More specifically, and by way of illustration, the Company subjected Mr. Cooper

to adverse actions because of his age, including, but not limited to, subjecting Mr. Cooper to a

harassing and otherwise hostile work environment (including discriminatory age-based

comments), denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr.

Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper

to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's

employment because Mr. Cooper was over 40 years old and/or because Mr. Cooper was an older individual with a disability ("age plus" discrimination).

143.    Indeed, upon information and belief, Mr. Cooper was replaced by an individual who was significantly younger than he was.

144.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cooper and/or conduct so reckless to amount to such disregard.

145.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cooper and/or conduct so reckless to amount to such disregard.

146.    As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

147.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, uncapped compensatory damages (including, but not limited to, emotional distress damages, reduced earning capacity, and lost compensation and benefits, including back pay and front pay), punitive damages, interest, attorneys' fees, and costs.

**COUNT V**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

148.    Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

149.    Mr. Cooper engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity

related to the harassing and discriminatory actions taken by the Company due to Mr. Cooper's disabilities; (ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Mr. Cooper to perform the essential functions of his job, and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the Company's refusal or reticence to approve Mr. Cooper's requested disability-related accommodations.

150.     The disability-related accommodations which the Company retaliated against Mr. Cooper for requesting and/or utilizing included, but were not limited to, a temporary leave of absence to obtain medical treatment (or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

151.     The disability-related accommodations requested by Mr. Cooper did not pose an undue burden on the Company.

152.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cooper's exercising of, or enjoyment of, one or more rights granted by the ADA.

153.     More specifically, the Company subjected Mr. Cooper to adverse actions in retaliation for the protected activities engaged in by Mr. Cooper, including, but not limited to, subjecting Mr. Cooper to a harassing and otherwise hostile work environment, denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

154.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Cooper.

155.     As a direct and proximate result of the Company's violations of the ADA, Mr.

Cooper has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life,

and emotional damages.

156.     Mr. Cooper seeks all damages to which he is entitled, including, but not limited to

lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages,

interest, attorney's fees, and costs.

### COUNT VI

### (Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*)

### Mr. Cooper v. the Company
### (Monro, Inc., Monro Service, and Monro Muffler)

157.     Mr. Cooper incorporates all paragraphs above and below as if set forth fully

herein.

158.     Mr. Cooper engaged in activity protected under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621 *et seq*., including, but not limited to, by opposing and

expressing protected concerns, and/or engaging in other protected activity, related to age

discrimination.

159.     The Company retaliated against the Plaintiff for engaging in such opposition to

age discrimination, by subjecting Mr. Cooper to subjecting Mr. Cooper to a harassing and

otherwise hostile work environment (including age-based discriminatory comments), denying

Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

160.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cooper's exercising of, or enjoyment of, one or more rights granted by the ADEA.

161.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Cooper.

162.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Cooper has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

163.    Mr. Cooper seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, liquidated (*i.e.,* double) damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

164.     Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

165.     Mr. Cooper engaged in protected activity under the New York State Human Rights Law, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Mr. Cooper's disabilities, age, and/or status as an older individual with a disability ("age plus" discrimination); (ii) requesting reasonable accommodations for disabilities which were intended to allow Mr. Cooper to perform the essential functions of his job, and/or (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the Defendants refusal or reticence to approve Mr. Cooper's requested disability-related accommodations.

166.     The disability-related accommodation requests which Defendants retaliated against Mr. Cooper for requesting and/or utilizing included, but were not limited to, denying one or more requests to a temporary leave of absence to obtain medical treatment(or extension of a leave of absence) related to his disability(ies), to recover from flare-ups of disability symptoms, and/or a two week leave to self-quarantine based on Mr. Cooper's doctor's recommendation.

167.     Defendants unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cooper's exercising of or enjoyment of rights granted by the New York State Human Rights Law.

168.     More specifically, Defendants subjected Mr. Cooper to adverse actions in retaliation for the protected activities engaged in by subjecting Mr. Cooper to a harassing and otherwise hostile work environment (including discriminatory age-based comments), denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work

from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave

protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

169.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious

disregard of the rights of Mr. Cooper and/or conduct so reckless to amount to such disregard.

170.    As a direct and proximate result of Defendants' violation of the New York State

Human Rights Law, Mr. Cooper has suffered and continues to suffer damages, including, but not

limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain

and suffering, loss of enjoyment of life, and emotional damages.

171.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay), lost

benefits, reduced earning capacity, other financial damages, emotional distress damages

(including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation,

punitive damages,  interest, attorney's fees, and costs.

## COUNT VIII

**(Interference with Exercising Rights under the Family and Medical Leave Act – 29 U.S.C.
§2615)**

**Mr. Cooper v. the Company
(Monro, Inc., Monro Service, and Monro Muffler)**

172.    Mr. Cooper incorporates all paragraphs above and below as if set forth fully

herein.

173.    During all relevant times, the Company (including Monro, Inc.,  Monro Service,

and Monro Muffler each individually and all collectively) was engaged in an industry affecting

commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

174.    Additionally, at all relevant times the Company (including Monro, Inc., Monro Service, and Monro Muffler each individually and all collectively) employed 50 or more employees within 75 miles of Mr. Cooper's worksite.

175.    As such, at all relevant times, the Company (including Monro, Inc.,  Monro Service, and Monro Muffler each individually and all collectively) was an employer under the FMLA.

176.    At all relevant times, Mr. Cooper had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

177.    As such, Mr. Cooper was an eligible employee under the FMLA.

178.    Mr. Cooper's type 2 diabetes and asbestosis, and Mr. Cooper's actual or suspected COVID-19 diagnosis constituted serious medical conditions causing periods of incapacity (for more than three days) with continuing treatment by a health care provider.

179.    Mr. Cooper was entitled to FMLA leave.

180.    Mr. Cooper sought to exercise his rights under the FMLA, including by requesting one or more protected leaves under the FMLA; by requesting time off for specific disability-related reasons that the Company knew, or should have known, qualified Mr. Cooper for protections under the FMLA, and/or requesting information regarding his eligibility and/or entitlement to a protected leave under the FMLA; and/or informing his employer of the likelihood that he would be requesting a protected leave under the FMLA in the future.

181.    Mr. Cooper timely notified Defendants that he would need FMLA leave.

182.   Defendants interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Mr. Cooper's rights under the FMLA.

183.   Mr. Cooper sought to exercise continuous leave for his disabilities to receive treatment that would have allowed him to perform his job without significant flare ups of symptoms related to his type 2 diabetes and asbestosis disabilities

184.   Mr. Cooper requested continuous leave starting on or around March 21, 2020 because he needed treatment for his disabilities, including related to flare-ups of these disabilities.

185.   Mr. Cooper's leave was scheduled to run until at least May 1, 2020 and this full period was protected under the FMLA.

186.   Defendants, including by and through its agents, interfered with Mr. Cooper's rights under the FMLA leave, including but not limited to, by refusing to let Mr. Cooper return from his FMLA leave, pressuring him to return early from his leave and also seemingly (retroactively) denying his ability to take leave to which he was entitled, failing to reinstate Mr. Cooper to the same or similar position at the end of his FMLA leave and return to work, and/or terminating Mr. Cooper employment during his FMLA leave and while he was still on leave (thereby denying his leave).

187.   Furthermore, Defendants improperly (retroactively) denied Mr. Cooper's request(s) for leave (despite the fact that he was entitled to leave under the FMLA) in an attempt to otherwise discourage and prevent Mr. Cooper from utilizing FMLA leave while still employed, thereby further interfering with Mr. Cooper's FMLA rights.

188.   Indeed, Mr. Cooper's FMLA leave also constituted a negative factor in the Company's decision to undertake adverse actions against him (including termination) and the

Company's actions were intended to discourage and otherwise interfere with the utilization of FMLA leave.

189.    Defendants' actions in violation of the FMLA were willful and undertaken in bad faith.

190.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Cooper has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

191.    Mr. Cooper seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

## COUNT IX

**(Retaliation for Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Mr. Cooper v. the Company**
**(Monro, Inc., Monro Service, and Monro Muffler)**

192.    Mr. Cooper incorporates all paragraphs above and below as if set forth fully herein.

193.    During all relevant times, the Company (including Monro, Inc.,  Monro Service, and Monro Muffler each individually and all collectively) was engaged in an industry affecting

commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

194.    Additionally, at all relevant times, the Company (including Monro, Inc.,  Monro Service, and Monro Muffler each individually and all collectively) employed 50 or more employees within 75 miles of Mr. Cooper's worksite.

195.    As such, at all relevant times, the Company (including Monro, Inc., Monro Service, and Monro Muffler each individually and all collectively) was an employer under the FMLA.

196.    At all relevant times, Mr. Cooper had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

197.    As such, Mr. Cooper was an eligible employee under the FMLA.

198.    Mr. Cooper's type 2 diabetes, his asbestosis, and Mr. Cooper's actual or suspected COVID-19 diagnosis, each (and together) constituted serious medical conditions causing periods of incapacity (for more than three days) with continuing treatment by a health care provider.

199.    Mr. Cooper was entitled to FMLA leave.

200.    Mr. Cooper sought to exercise his rights under the FMLA, including by requesting one or more protected leaves under the FMLA by requesting time off for specific disability-related reasons that the Company knew, or should have known, qualified Mr. Cooper for protections under the FMLA, and/or requesting information regarding his eligibility and/or entitlement to a protected leave under the FMLA; and/or informing his employer of the likelihood that he would be requesting a protected leave under the FMLA in the future.

201.    Mr. Cooper timely notified Defendants that he would need FMLA leave.

202.    Mr. Cooper sought to exercise continuous leave for his disabilities to receive treatment that would have allowed him to perform his job without significant flare ups of symptoms related to his type 2 diabetes and/or asbestosis disabilities.

203.    Indeed, Defendants discouraged Mr. Cooper from utilizing leave and/or disciplined or retaliated against Mr. Cooper for utilizing FMLA leave by terminating him.

204.    For example, shortly after Mr. Cooper requested protected FMLA and/or requested addition leave protected under the FMLA, utilized his protected FMLA leave, and/or upon Mr. Cooper's request to be allowed to return to work, Defendants refused to allow Mr. Cooper to return and/or refused to return Mr. Cooper to his position. Mr. Cooper was instead terminated.

205.    Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Cooper for requesting and/or utilizing FMLA leave by subjecting Mr. Cooper to adverse actions, including, but not limited to, subjecting Mr. Cooper to a harassing and otherwise hostile work environment, denying Mr. Cooper the opportunity of progressive discipline, refusing to let Mr. Cooper return to work from his protected disability-related leave, refusing to allow Mr. Cooper to utilize leave protected under the FMLA that he was entitled to, and terminating Mr. Cooper's employment.

206.    Defendants' actions in violation of the FMLA were willful and undertaken in bad faith.

207.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Cooper has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits (including due to his termination), other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

208.     Mr. Cooper seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

WHEREFORE, the plaintiff, James Cooper, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff monetary damages, including, but not limited to, back pay, lost compensation and benefits, front pay, and other monetary harms;

D.  Award the Plaintiff damages for emotional distress;

E.  Award the Plaintiff compensatory damages, including, but not limited for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and, loss of enjoyment of life;

F.  Award the Plaintiff damages for harm to reputation and reduced earning capacity;

G.  Award the Plaintiff liquidated (i.e. double) damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

JAMES COOPER

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:                    By:    _____
                                Benjamin J. Wyatt, NY Bar # 5604590
                                BWyatt@Wyattlegalservices.com

                                Timothy J. Brock, NY Bar # 5614151
                                TBrock@wyattlegalservices.com

                                Katherine A. Gabriel, NY Bar # 5782487
                                Katherine@Wyattlegalservices.com

                                The Law Offices of Wyatt & Associates, P.L.L.C.
                                17 Elm Street, Suite C211
                                Keene, NH 03431
                                Telephone: (603) 357-1111
                                Facsimile: (603) 685-2868

                                New York Office:
                                418 Broadway, 2nd Floor
                                Albany, NY 12207
                                Telephone: (603) 357-1111
                                Facsimile: (603) 685-2868